IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| TIMOTHY STARBUCK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 6:20-03221-CV-S-MDH-SSA |
| ) | |
| KILOLO KIJAKAZI,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Before the Court is Plaintiff Timothy Starbuck's appeal of Defendant Social Security Administration Commissioner's ("Commissioner") denial of his application for disability insurance benefits under the Social Security Act (the "Act"). Plaintiff exhausted his administrative remedies, and the matter is now ripe for judicial review. After careful review of the record, the Court affirms the decision of the Administrative Law Judge ("ALJ").

## BACKGROUND

Plaintiff Timothy Starbuck applied for supplemental security income (SSI) under Title XVI of the Social Security Act (Act). 42 U.S.C. §§ 401-434 and 1381, *et seq.* (Tr. 164, 166). Sections 205(g) and 1631(c)(3) of the Act provide for judicial review of a "final decision" of the Commissioner of the Social Security Administration (SSA). 42 U.S.C. § 405(g). Plaintiff's claims were denied, and he requested a hearing before an administrative law judge (ALJ) (Tr. 100). Plaintiff appeared for hearing on October 24, 2019 (Tr. 40-75). Following the hearing, in a decision dated November 14, 2019, the ALJ found that Plaintiff was not under a "disability" as defined in

---

[1] Kilolo Kijakazi became Acting Commissioner of Social Security on July 9, 2021. Pursuant to Fed. R. Civ. P. 25(d)(1), Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit. By reason of the last sentence of 42 U.S.C. § 405(g), no further action need be taken.

1

the Act. (Tr. 8-20). On May 21, 2020, SSA's Appeals Council denied Plaintiff's request for review of the hearing decision (Tr. 1-3). Thus, Plaintiff has exhausted his administrative remedies, and the ALJ's decision stands as the final decision of Defendant Commissioner of Social Security, subject to judicial review.

In his November 14, 2019, decision, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, degenerative joint disease, of the right shoulder, osteoarthritis of the hands, left lower extremity fracture that has been surgically repaired, depression, anxiety, and attention deficit hyperactivity disorder (Tr. 13). The ALJ found that the severity of Plaintiff's impairments did not meet or equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 13). The ALJ found that Plaintiff retained the residual functional capacity to perform:

> light work as defined in 20 CFR 416.967(b) in that he can lift and/or carry, and push and/or pull 20 pounds occasionally, and 10 pounds frequently. He can sit, with normal breaks, for a total of 6 hours per 8-hour workday, and can stand and/or walk, with normal breaks, for a total of 6 hours per 8-hour workday. He can occasionally climb ramps and stairs, and never climb ladders, ropes, or scaffolds. He can frequently balance, kneel, crouch, and crawl. He can occasionally stoop. He can occasionally reach overhead with his right upper extremity; he can frequently finger with his bilateral upper extremities. He can tolerate occasional exposure to hazards such as unprotected heights and moving mechanical parts. He can understand, remember, and apply instructions to perform simple, routine, tasks (jobs SVP 2 and below). He can make work decisions commensurate with those tasks. He can concentrate to work at a consistent pace for two-hour periods, before and after customary breaks, throughout the workday, and he can tolerate occasional interactions with supervisors and co-workers in jobs that do not require teamwork for the completion of assignments. He must avoid interactions with the general public.

(Tr. 15, 16). The ALJ obtained vocational expert testimony at the hearing (Tr. 66-71). Based on this testimony, the ALJ found that Plaintiff could not return to his past relevant work, but given his vocational profile and residual functional capacity, could perform other jobs that exist in significant numbers in the national economy, including the following light

2

exertional level, unskilled jobs: photocopy machine operator, mail sorter, and labeler (Tr. 19). As a result, the ALJ found that Plaintiff was not disabled (Tr. 20).

**STANDARD**

Judicial review of the Commissioner's decision is a limited inquiry into whether substantial evidence supports the findings of the Commissioner and whether the correct legal standards were applied. *See* 42 U.S.C. §§ 405(g), 1383(c)(1)(B)(ii)(3). Substantial evidence is less than a preponderance of the evidence and requires enough evidence to allow a reasonable person to find adequate support for the Commissioner's conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Freeman v. Apfel*, 208 F.3d 687, 690 (8th Cir. 2000). This standard requires a court to consider both the evidence that supports the Commissioner's decision and the evidence that detracts from it. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). That the reviewing court would come to a different conclusion is not a sufficient basis for reversal. *Wiese v. Astrue*, 552 F.3d 728, 730 (8th Cir. 2009). Rather, "[i]f, after review, we find it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, we must affirm the denial of benefits." *Id.* (quoting *Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996)).

Courts "defer heavily to the findings and conclusions of the Social Security Administration" and will disturb the Commissioner's decision only if it falls outside the "zone of choice." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *Casey v. Astrue*, 503 F.3d 687, 691 (8th Cir. 2007). Incorrect application of a legal standard is grounds reversal, *Ford v. Heckler*, 754 F.2d 792 (8th Cir. 1985), but the Court defers to the ALJ's determinations of the credibility of witness testimony, as long as the ALJ's determinations are supported by good reasons and substantial evidence. *Pelkey v. Barnhart,* 433 F.3d 575, 578 (8th Cir. 2006). Finally, while a

deficiency in opinion writing is not enough to merit reversal where it has no practical effect on the outcome, incomplete analyses, inaccuracies, and unresolved conflicts of evidence may be a basis for remand. *Reeder v. Apfel*, 213 F.3d 984, 988 (8th Cir. 2000).

## DISCUSSION

The specific issues in this case are: (a) whether substantial evidence supports the ALJ's residual functional capacity finding; and (b) whether substantial evidence supports the ALJ's evaluation of the opinion evidence of record regarding Plaintiff's mental impairments and limitations in formulating the residual functional capacity finding.

**A. Substantial evidence supports the ALJ's residual functional capacity finding as to Plaintiff's mental limitations.**

As Plaintiff points out, residual functional capacity is the most an individual can still do despite his or her limitations. 20 C.F.R. § 416.945(a). It is assessed based on all the relevant evidence in the record. *Id.* In constructing a claimant's residual functional capacity, the ALJ considers numerous factors, including the medical evidence, nonmedical evidence, and the claimant's statements about what he or she is able to do. *See* 20 C.F.R. § 416.945(a)(3). As part of this analysis, the ALJ will consider statements about the intensity, persistence, and limiting effects of symptoms 20 C.F.R. § 416.929. In evaluating symptoms or subjective complaints, the ALJ considers additional factors.

The ALJ found Starbuck suffered from the severe mental impairments of depression, anxiety, and attention deficit hyperactivity disorder. (Tr. at 13). He concluded Starbuck retained the ability to understand, remember, and apply instructions to perform simple, routine tasks (jobs SVP 2 and below); could make work decisions commensurate with those tasks; could concentrate to work at a consistent pace for two-hour periods, before and after customary breaks, throughout the workday; could tolerate occasional interactions with supervisors and co-workers in jobs that

4

do not require teamwork for the completion of assignments; and must avoid interaction with the general public. (Tr. at 15-16).

Here, the ALJ acknowledged Plaintiff's mental impairments and "history of mental health treatment," but concluded that the record "does not support the degree of limitation alleged by [Plaintiff]" (Tr. 18). Substantial evidence supports this finding.

As the ALJ indicated, findings on mental status examination were often inconsistent with Plaintiff's allegations of mental impairments of disabling level severity (Tr. 18). For instance, on mental status examination, Plaintiff frequently presented as "casual, calm, and cooperative" (Tr. 363, 364, 365, 398, 401, 402, 403). In addition, he often exhibited normal or good concentration, normal mood and affect, good motivation and energy, and normal or logical thought process (Tr. 363, 364, 398, 399, 401, 402). At various examinations where Plaintiff sought treatment for issues other than his mental impairments, Plaintiff likewise exhibited a normal mood and affect, normal behavior, normal judgment, and normal thought content (Tr. 263, 277, 307, 687, 698). At times, Plaintiff specifically denied panic attacks, worry, anxiety, or other psychological symptoms, which is incongruent with claims of disabling level anxiety, panic attacks, or other mental impairments (Tr. 363, 399, 559, 570, 578, 600, 617, 698). The ALJ appropriately concluded that Plaintiff's allegations were inconsistent with the medical evidence and the record as a whole. An ALJ may discount subjective complaints that are undermined by the medical evidence. *See Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019). An ALJ may decline to credit a claimant's subjective complaints if the evidence as a whole is inconsistent with the claimant's testimony. *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016).

The ALJ also noted that Plaintiff reported improvement with treatment or medication (Tr. 18). Plaintiff has described his motivation, concentration, and energy as "good" with medication

(Tr. 363, 399). On various occasions, he reported improvement or that he was doing well (*See, e.g.*, Tr. 362, 363, 364). It was likewise appropriate for the ALJ to cite improvement in Plaintiff's condition with treatment or medication when assessing the consistency of his complaints against the record as a whole. *See Lawson v. Colvin,* 807 F.3d 962, 965 (8th Cir. 2015) ("The notes also indicate her mental conditions improved with the proper medications.").

Despite the unremarkable findings on mental status examination described above and Plaintiff's reported improvement with treatment, the ALJ still included multiple mental limitations in the residual functional capacity finding, limiting Plaintiff, generally speaking, to simple, routine tasks with only occasional interaction with others, and no interaction with the public (Tr. 15, 16). This shows that the ALJ carefully considered the record as a whole. Indeed, the mental limitations found by the ALJ were arguably more restrictive than Plaintiff himself suggested in terms of his abilities and mental limitations. On his Function Report completed in connection with his application for benefits, Plaintiff stated he can pay attention for "as long as needed," follows written and spoken instructions "pretty good," and gets along with authority figures "pretty good" (Tr. 230). In identifying the functional areas affected by his impairments, he described only physical limitations, not mental ones; he did not list memory, completing tasks, concentration, understanding, following instructions, or getting along with others as areas adversely affected by his mental impairments (Tr. 230). For all of the foregoing reasons, substantial evidence supports the mental limitations found by the ALJ in the residual functional capacity finding.

Plaintiff argues that the ALJ failed to provide a "summary of the medical evidence" to reach "his own conclusions" based on the evidence, contending that the ALJ's summary of the medical evidence regarding Plaintiff's mental impairments was based on an "isolated view of the record." Pl.'s Br. at 6. Plaintiff claims that the ALJ simply cited normal mental status examination

findings, reports where Plaintiff stated he was "doing well," or reports that he was "much better," to support the residual functional capacity finding, but that the ALJ failed to discuss other evidence showing ongoing reports of symptoms, medication changes, or less unremarkable findings on mental status examination. Pl.'s Br. at 6.

For one, the ALJ did acknowledge Plaintiff's history of mental health treatment for various psychological conditions (Tr. 18). However, consistent with his obligations as an ALJ, the ALJ then considered and cited evidence that was inconsistent with claims of disability due to mental impairments. It is the role of the ALJ to resolve conflicts in the medical evidence. *See Lawrence v. Saul*, 970 F.3d 989, 996 (8th Cir. 2020). "'The mere fact that some evidence may support a conclusion opposite to that reached by the Commissioner,' however, 'does not allow this Court to reverse the decision of the ALJ.' *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004)." *Swink v. Saul*, 931 F.3d 765, 770 (8th Cir. 2019). "While some evidence in the record could lend support to a more restrictive RFC [residual functional capacity] finding, we cannot say that the ALJ's decision 'lies outside the available zone of choice.'" *Twyford v. Comm'r, Soc. Sec. Admin.,* 929 F.3d 512, 518 (8th Cir. 2019). Moreover, Plaintiff's reasoning is flawed because the ALJ is not required to cite to or summarize all the evidence, and the lack of citation to a specific piece of evidence does not mean that it was not considered. *Chaney v. Colvin*, 812 F.3d 672, 678 (8th Cir. 2016); *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

Substantial evidence supports the ALJ's residual functional capacity finding as to Plaintiff's mental limitations. Plaintiff's arguments to the contrary are unconvincing for the reasons discussed. In arguing that the ALJ's mental residual functional capacity is not supported by substantial evidence, Plaintiff next claims that the ALJ erred with respect to the evaluation of certain opinion evidence.

### B. Substantial evidence supports the ALJ's evaluation of the opinion evidence of record in formulating Plaintiff's residual functional capacity.

Plaintiff argues that the ALJ relied on the outdated, non-examining State agency consultant opinion in the face of two disabling medical opinions from Starbuck's psychiatrist of over two years. Reliance on the State agency consultant's opinion, according to Plaintiff, was insufficient to constitute substantial evidence to support the RFC.

Plaintiff asserts that "[t]he ALJ based the mental RFC [residual functional capacity] on the non-examining State agency consultant opinion of Dr. Altomari" and that "[o]rdinarily, non-examining and non-treating physicians do not constitute substantial evidence on the record as a whole." Pl.'s Br. at 3 (legal citations omitted). Plaintiff's argument that the ALJ "based" his residual functional capacity finding on Dr. Altomari's opinions is factually inaccurate. A comparison of the two plainly shows that the ALJ's residual functional capacity finding was more restrictive than Dr. Altomari's. Most conspicuously, the ALJ included additional limitations regarding social interaction to those found by Dr. Altomari. Whereas Dr. Altomari opined only that Plaintiff "would work best in a low-stress environment away from the general public," the ALJ found that Plaintiff can tolerate only "occasional interactions with supervisors and co-workers in jobs that do not require teamwork for the completion of assignments" and "must avoid interactions with the general public" (Tr. 16). Thus, the ALJ's RFC finding as to mental limitations is both more restrictive and specific than Dr. Altomari's. Plaintiff's contention that the ALJ "based" his RFC finding on this opinion is, therefore, misplaced.

The ALJ did, however, appropriately, find Dr. Altomari's opinion persuasive, reasoning that the opinion was "well supported by the evidence, including the mental status findings and progress notes discussed above, and [was] consistent with the record as a whole" (Tr. 18). By its plain terms, this does not indicate that the ALJ relied on this opinion or based his residual

8

Case 6:20-cv-03221-MDH   Document 19   Filed 08/31/21   Page 8 of 10

functional capacity finding on it. Rather, the ALJ simply concluded that the limitations given in the opinion were generally consistent with the record as a whole.

Plaintiff's insinuation that, as a State agency consultant, Dr. Altomari's opinions are inherently unreliable since they were rendered before additional evidence was added or the record was complete is also misdirected and runs contrary to agency regulations and policy. The ALJ's task was to evaluate the persuasive value of the opinion based on the record as a whole; here, that is precisely what the ALJ did. While Dr. Altomari may not have seen the entire record given the date of his opinion, the ALJ did see the whole record and was able to assess whether Dr. Altomari's opinions were supported by and consistent with the record. In fact, under the regulations, the ALJ was required to evaluate this opinion. The new regulations require the ALJ to consider the opinions of state agency medical consultants because they are highly qualified and experts in Social Security disability evaluation. *See* 20 C.F.R. § 416.913a. "The ALJ's reasonable reliance on an opinion from a highly qualified expert is within the zone of choice." *Morton v. Saul*, No. 2:19-CV-92 RLW, 2021 WL 307552, at *8 (E.D. Mo. Jan. 29, 2021) (citing *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).

Plaintiff also suggests that the ALJ erred because Dr. Altomari's opinion was inconsistent with those of the treating psychiatrist, Dr. Harden, who opined that Plaintiff had marked or extreme limitations in various areas of mental functioning. Pl.'s Br. at 1, 5, 6. But the ALJ accurately explained that Dr. Harden's opinions, overall, were not persuasive because they were inconsistent with the record as a whole (Tr. 18). Substantial evidence supports this finding as discussed in detail above.

## CONCLUSION

For the foregoing reasons, the Court finds that substantial evidence supports the ALJ's decision on the record as a whole. Accordingly, the decision of the ALJ is hereby affirmed.

**IT IS SO ORDERED.**

Dated: August 30, 2021  /s/ Douglas Harpool
**DOUGLAS HARPOOL
United States District Judge**